J-S24017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.S., MOTHER | : | |
| | : | |
| | : | No. 523 EDA 2022 |

Appeal from the Order Entered February 15, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0001376-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.J., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.S., MOTHER | : | |
| | : | |
| | : | No. 524 EDA 2022 |

Appeal from the Decree Entered February 15, 2022
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000684-2021

BEFORE:   PANELLA, P.J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED AUGUST 12, 2022**

A.S. (Mother) appeals from the decree and order, entered in the Court of Common Pleas of Philadelphia County, terminating her parental rights to her child, J.J. (Child) (born 8/19), and changing the permanency goal to

_____

[*] Retired Senior Judge assigned to the Superior Court.

adoption, respectively.[1]  Counsel has filed a petition to withdraw pursuant to

***Anders v. California***, 386 U.S. 738 (1967).[2]  Due to Mother's consistent

failure to comply with court-ordered objectives in order to address the

significant mental health issues and intellectual disabilities that prevent her

from capably parenting Child, we affirm.  We also grant counsel's petition to

withdraw.

Immediately following Child's birth in August 2019, the Philadelphia

Department of Human Services (DHS) received a general protective services

(GPS) report regarding Mother's and Child's father's (Father's) [3] inability to

care for Child.  The GPS report indicated that both parents have intellectual

disabilities and that they were unable to feed Child properly in the hospital.

DHS obtained an order of protective custody six days after Child's birth; Child

was placed with maternal great-grandmother, where he still resided at the

time of the instant termination hearing.

---

[1] Mother's counsel has complied with the dictates of ***Commonwealth v. Walker***, 185 A.3d 960 (Pa. 2018), by filing two separate notices of appeal—one on the dependency docket (523 EDA 2022) and one on the adoption docket (524 EDA 2022).  ***See Walker***, ***supra*** at 976 ("Where . . . one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeals must be filed."); ***see also In the Matter of M.P.***, 204 A.3d 976, 981 (Pa. Super. 2019) (applying ***Walker*** holding to children's fast track appeals).  Those appeals were consolidated *sua sponte* by our Court on April 4, 2022.  ***See*** Order, 4/6/22; ***see also*** Pa.R.A.P. 513.

[2] ***See also Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).

[3] Although Father's parental rights were also terminated, he is not a party to the present appeal.  At the time of the termination hearing, Mother and Father were together.  N.T. Termination Hearing, 2/15/22, at 20.

Child was adjudicated dependent, following a hearing, on September 9, 2019. At the dependency hearing, the court ordered that Mother undergo a behavioral health evaluation with IQ testing and obtain an intensive case manager for herself. DHS also set the following parental objectives for Mother: (1) attend parenting classes; (2) contact adult intensive disability services for self-help; and (3) undergo a parenting capacity evaluation.

Mother completed a behavioral health evaluation on September 11, 2019, which recommended that she engage in Fidelity Community Treatment for therapy, manage her medications, learn cognitive behavioral techniques, obtain intensive disability services (IDS) and a personal intensive case manager, engage in family school, and undergo a parenting capacity evaluation.[4] Social workers at the community umbrella agency (CUA) referred Mother for services to help her meet these objectives.

Mother was diagnosed with adjustment disorder, unspecified schizophrenic spectrum, psychotic disorder, schizoaffective disorder, and intellectual disabilities. Mother is considered "extremely low functioning, with a full-scale IQ of 50.[5] Mother also suffers from lupus, a chronic disease that involves the immune system and can cause damage to any part of the body.

_____

[4] Mother did not have the cognitive ability to complete her parenting capacity evaluation over the telephone.

[5] A case manager testified that Mother is unable to function independently. *See* N.T. Termination Hearing, 2/15/22, at 25-28 (noting Mother does not know how to navigate public transportation, could not get from her house to the agency on her own, needs assistance with menial tasks, and has trouble figuring out how to get food and eat when she is home alone).

*See https://www.usinlupus.com/basics-of-lupus/what-is-lupus* (last visited on 7/29/22).

Except for sporadic, supervised visits with Child at great-grandmother's home and DHS pre-COVID-19, Mother failed to consistently attend virtual visits with Child; Mother last saw Child in April 2021. As a result of her non-compliance with visitation, Mother was precluded from engaging in family school. Mother never engaged in mental health treatment or achieved the necessary stability to participate in IDS despite a social worker filling out the IDS application with Mother and mailing it in for her.

On November 12, 2021, DHS filed petitions seeking to terminate Mother's and Father's parental rights. On February 15, 2022, the trial court held a termination hearing[6] at which CUA case managers Janine Allen and Asia White, as well as CBH representative, Tisha Morales, testified. Following the hearing, the court terminated Mother's parental rights pursuant to sections 2511(a)(1), (2), (5), (8) and (b) of the Adoption Act.[7] The court stated its reasons for termination on the record as follows:

> I find that there's been clear and convincing evidence to justify the termination of both [M]other['s] and [F]ather's rights under

---

[6] At the termination hearing, Child was represented by Judith Kotch-Curtis, Esquire, a child advocate and *guardian ad litem*. **See In Re: T.S., E.S.**, 192 A.3d 1080, 1092 (Pa. 2018) ("[D]uring contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests.").

[7] 23 Pa.C.S. §§ 2101-2938.

2511(a)(1), (2), (5), (8) and 2511(b). I do not find that there would be any irreparable harm as a result of the termination of rights, and that it would, in fact, be in the child's best interest.

This is an unfortunate situation where the parents have not demonstrated any capacity for almost two years to care for the life of their child. They have not seen their child in nearly a year, and at best, have made minimal attempts throughout the duration of this case to accomplish what they need to, to be reunited with [C]hild.

And, for these reasons, I'm going to grant this request, and we will change the goal in this case to adoption.

N.T. Termination Hearing, 2/15/22, at 64.

Mother filed timely notices of appeal.[8] On June 3, 2022, counsel filed a petition for leave to withdraw[9] with our Court, pursuant to **Anders**, **supra**.

---

[8] On May 8, 2022, our Court entered an order noting that Mother's counsel had failed to file an appellate brief and that it "appear[ed] to this Court that Attorney Angelotti ha[d] abandoned [Mother]." Order, 5/8/22. Accordingly, we remanded the matter to the trial court for a determination as to whether counsel had, in fact, abandoned Mother. On remand, the trial court concluded that counsel had not, in fact, abandoned Mother, and permitted counsel to file a late brief. The case has now been returned to this panel for final disposition.

[9] Pursuant to Pa.R.A.P. 1925(c)(4):

If counsel intends to seek to withdraw in a criminal case pursuant to **Anders**/**Santiago** or if counsel intends to seek to withdraw in a post-conviction relief appeal pursuant to **Turner**/**Finley**, counsel shall file of record and serve on the judge a statement of intent to withdraw in lieu of filing a [Rule 1925(b)] Statement.

Pa.R.A.P. 1925 (c)(4). **See In the Interest of J.T**., 983 A.2d 771 (Pa. Super. 2009) (where **Anders** procedure from criminal proceedings has been applied to parental termination cases, parent's counsel acted appropriately by following Rule 1925(c)(4) in appeal from decision terminating parental rights to child).

In **In re Adoption of V.E.**, 611 A.2d 1267 (Pa. Super. 1992), our Court stated:

> Counsel appointed to represent an indigent parent on a first appeal from a decree involuntarily terminating his or her parental rights, may, after a conscientious and thorough review of the record, petition this court for leave to withdraw representation if he or she can find no issues of arguable merit on which to base the appeal. Given the less stringent standard of proof required and the quasi-adversarial nature of a termination proceeding in which a parent is not guaranteed the same procedural and evidentiary rights as a criminal defendant, the court holds that appointed counsel seeking to withdraw representation must submit an **Anders** brief.

**Id.** at 1275. Moreover, we held that "any motion to withdraw representation, submitted by appointed counsel, must be accompanied by an advocate's brief, and not the *amicus curiae* brief delineated in [**Commonwealth v.**]**McClendon**, [434 A.2d 1185 (Pa. 1981)]. **See also In re Adoption of R.I.**, 312 A.3d 601, 602 (Pa. 1973) ("[T]he logic behind . . . an individual in a criminal case being entitled to representation by counsel at any proceeding that may lead to 'the deprivation of substantial rights'[,] . . . is equally applicable to a case involving an indigent parent faced with the loss of her child.").

In his advocate's brief, counsel raises the following issues for our consideration:

> (1)   Did [] counsel for [Mother] meet the requirements of **Anders**[] and [**Commonwealth v.**] **Santiago**[, 978 A.2d 349, 361 (Pa. 2009)?]
>
> (2)   Did the trial court err as a matter of law or abuse[] its discretion where it determined that the requirements of 23

> Pa.C.S.A. § 2511(a) to terminate [Mother's] parental rights were met[?]
>
> (3) Did the trial court err as a matter of law or abuse[] its discretion where it determined the requirements of 23 Pa.C.S.A. 2511(b) were met[?]
>
> (4) Did the trial court err as a matter of law or abuse[] its discretion where it determined that that permanency goal for [Child] should be changed to adoption[?]

***Anders*** Brief, at 3.

Before reaching the merits of Mother's appeal, we must first address counsel's application to withdraw. To withdraw under ***Anders***, counsel must:

> (1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; (2) furnish a copy of the [***Anders***] brief to the [appellant]; and (3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.[10]

***Commonwealth v. Cartrette***, 83 A.3d 1030, 1032 (Pa. Super. 2013) (en banc) (citing ***Commonwealth v. Lilley***, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of ***Anders***, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to [his or her] petition to withdraw a copy of the letter sent to [the] client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

An ***Anders*** brief must also comply with the following requirements:

---

[10] Mother has not retained private counsel or raised any *pro se* additional arguments on appeal.

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.  Finally, this Court must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel."  *Commonwealth v. Flowers*, 133 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Instantly, Mother's counsel filed a petition with our Court, seeking leave to withdraw his appearance as counsel in this appeal and acknowledging that he has "conducted a conscientious examination of the record [and that he] has determined that, in spite of [Mother's] expressed desire, an appeal [] would be wholly frivolous."  Petition to Withdraw, 6/3/22, at ¶¶ 5-6.  Attached to the petition is a copy of the letter counsel sent to Mother advising her of her rights.  Counsel has also filed an *Anders* brief, in which he complies with the procedures announced in *Santiago*.  Counsel has furnished this brief to Mother and advised her that she may retain new counsel or proceed *pro se*. Accordingly, we find that counsel has substantially complied with the requirements of *Anders* and *Santiago*, and, thus, we may review the issues raised by counsel and also conduct our independent review of the record to determine whether Mother's appeal is, in fact, frivolous.  *Commonwealth v.*

*Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007) (substantial compliance with *Anders* requirements sufficient).

Our standard of review in termination of parental rights cases is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Instantly, Child was initially removed from Mother's care, only days after his birth, due to Mother's severe mental health issues and developmental issues, resulting in Mother's inability to meet Child's basic needs. At the termination hearing, a CUA case manager testified that, although Mother completed a parenting class in June 2021, she did not follow through with IDS in order to establish additional mental health services. A case manager also

testified that Mother's cognitive developmental delay made her unable to participate in the parenting capacity evaluation. N.T. Termination Hearing, 2/15/22, at 17-18. With regard to housing, CUA case manager Allen testified that Mother moved several times throughout the life of the case; each of these residences were deemed inappropriate as they were in "deplorable conditions [with] leaky roofs [and] hazards." *Id.* at 22. Mother's sole source of income is Social Security. *Id.* Further, Mother declined the opportunity to move in with great-grandmother and Child. *Id.* at 42-43.

Thus, despite services from CUA and DHS, Mother failed to engage in mental health treatment, obtain stable housing, maintain consistent visitation with Child, or receive help with her intellectual disabilities. Mother also turned down an invitation to live in a stable environment with Child at great grandmother's residence. Since the time that Child was adjudicated dependent and placed with great-grandmother, more than two years ago, Mother has minimally complied with her plan objectives in order to be reunited with Child. Most notably, Mother's significant mental health problems and intellectual disabilities, which classify her as "extremely low functioning," make her incapable of adequately and appropriately parenting Child. *See* N.T. Termination Hearing, 2/15/22, at 25. Because the record supports the conclusion that termination would best serve Children's needs and welfare, the court properly terminated Mother's parental rights pursuant to section

2511(a)(8).[11] ***See Adoption of C.J.P.***, 114 A.3d 1046, 1054 (Pa. Super. 2015) ("A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citation omitted).

Additionally, the court properly terminated Mother's parental rights pursuant to section 2511(b), where testimony revealed that there is no existing bond between Mother and Child and that Mother does not meet any of Child's "emotional, medical,[12] educational, developmental, or daily needs." N.T. Termination Hearing, 2/15/22, at 39-40, 42; ***see id.*** at 40 (CUA case manager describing Mother's relationship with Child as "nonexistent"). Moreover, CUA case manager Allen testified that it would be in Child's best interest to terminate Mother's parental rights where Mother is simply not capable of caring for Child due to her significant intellectual challenges. ***Id.*** at 41. Moreover, the same case manager testified that it would not cause Child irreparable harm if Mother's parental rights were terminated. ***Id.*** at 42. Finally, Child was placed with maternal great-grandmother only days after his

---

[11] ***See*** 23 Pa.C.S. § 2511(a)(8) ("The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.").

[12] Child was born with a medical condition, Cytomegalovirus (CMV), which can cause hearing loss, developmental delay and, more rarely, vision problems. N.T. Termination Hearing, 2/15/21, at 46.

birth, Mother has not visited with Child since April 2021, and Mother did not engage well when she did participate in visits with Child. *Id.* at 24.

Under such circumstances, we conclude that the trial court properly terminated Mother's parental rights under section 2511(b) where Mother's parental incapacity, and the likelihood that she will never be able to remedy that incapacity, is an important consideration when determining what is best for Child's developmental, physical, and emotional needs and welfare. *In re Adoption of C.D.R.*, 111 A.3d 1212, 1220 (Pa. Super. 2015) ("Clearly, it would not be in Child's best interest for his life to remain on hold indefinitely in hopes that Mother will one day be able to act as his parent.") (citation omitted).

In her final issue, Mother contends that the court improperly changed Child's permanency goal from reunification to adoption where the change was not in Child's best interest.

When reviewing a goal change order, this Court adheres to an abuse of discretion standard of review. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020). We must accept the trial court's factual findings and credibility determinations if the record supports them, but need not accept the court's inferences or legal conclusions. *Id.*

> Pursuant to [42 Pa.C.S.A.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and

feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. **The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.**

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted) (emphasis added).

Here, the evidence reveals that Child has been in placement for more than two and a half years, Child needs permanency, Mother does not have the capacity to properly care for Child (or even herself independently), Mother's progress in her service objectives has been minimal at best, and nothing in the record suggests that Mother would be able to reunify with Child within any reasonable amount of time. Under these circumstances, the trial court properly concluded that changing the placement goal was in Child's best interests. *Interest of D.R.-W.*, *supra*; *In re A.B.*, *supra*.

Following our independent review of the certified record, we conclude that the appeal is frivolous and unsupported in law or in fact. Thus, we grant counsel's application to withdraw. *In re V.E.*, *supra*. Moreover, there is ample, competent evidence to support the trial court's factual findings, *T.S.M.*, *supra*, and the court's conclusions are not a result of an error of law or an abuse of discretion. *Id.*

Decree and order affirmed. Application to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/12/2022